| | |
|---|---|
| DISTRICT COURT, COUNTY OF LA PLATA, STATE OF COLORADO<br>1060 East 2nd Ave., Room 106<br>Durango, CO 81301-5157 | DATE FILED: April 16, 2018 4:40 PM<br>FILING ID: E8EEDDA33AD23<br>CASE NUMBER: 2018CV30052 |
| **Plaintiffs: MICHELLE CLIFTON, individually, TAEGEN CLIFTON, a minor, by and through her next friends and natural parents, Michelle Clifton and Kenny Clifton, KEALAN CLIFTON, a minor, by and through his next friends and natural parents, Michelle Clifton and Kenny Clifton**<br><br>vs.<br><br>**Defendant: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | <br><br>▲ COURT USE ONLY ▲ |
| R. NICHOLAS PALMER,<br>ATTORNEY AT LAW, LLC<br>R. Nicholas Palmer, No. 13405<br>2855 Main Ave., Suite B-101<br>Durango, CO 81301<br>(970) 385-9000, Telephone<br>E-Mail: nick@npalmerlaw.com<br>-and-<br>John G. Taussig III, #13496<br>Scott D. Smith, #35009<br>TAUSSIG & SMITH<br>5377 Manhattan Circle, Suite 203<br>Boulder, CO 80301<br>Phone No.: (303) 443-2700<br>jt@taussigsmith.com<br>scott@taussigsmith.com<br>Attorney for Plaintiffs | Case Number:<br><br>Division: |
| **COMPLAINT** | |

Plaintiffs, Michelle Clifton, Taegen Clifton, a minor, by and through her next friends and natural parents, Michelle Clifton and Kenny Clifton, and Kealan Clifton, a minor, by and through her next friends and natural parents, Michelle Clifton and Kenny Clifton, by and through R. Nicholas Palmer, Attorney at Law, LLC, for their Complaint against Defendant, state and aver as follows:

EXHIBIT A

## PARTIES

1. Michelle Clifton and Kenny Clifton are husband and wife, and the natural parents of Taegen Clifton, a minor, and Kealan Clifton, a minor (collectively "Plaintiffs" or "Cliftons"). The Cliftons are residents of the County of La Plata, State of Colorado with a residential address of 2132 Crestview Drive, Durango, Colorado.

2. State Farm Mutual Automobile Insurance ("State Farm") is a foreign corporation in the State of Colorado formed under the laws of the State of Illinois with an address for its principal place of business in Colorado of 1555 Promontory Circle, Greeley, CO 80638-0001, and is authorized to do business in the State of Colorado with a registered agent of the Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.

## GENERAL ALLEGATIONS

3. State Farm is an insurance company, and provides insurance coverage to its customers, including automobile insurance coverage under the laws of the State of Colorado.

4. Plaintiffs were insured by State Farm on September 17, 2014 under an automobile insurance policy which included total uninsured/underinsured (UM) motorist benefits in the total amount of $100,000.00 for each person and $300,000.00 for each accident.

5. The insurance policy issued by State Farm to Plaintiffs included an implied covenant of that State Farm would act in good faith and deal fairly with Plaintiffs under the policies.

6. State Farm promises that it will be there to help its insureds, such as Plaintiffs in the event of an accident.

7. State Farm promises in its advertisements and promotional materials "that like a good neighbor, State Farm is there (in the event of an accident)."

8. State Farm further promises in its advertisements and promotional materials it is "here to help life go right" for its insureds, such as Plaintiffs, in the event of an accident.

9. State Farm had a duty to investigate and adjust Plaintiffs' claim in good faith and without delay.

10. The State Farm, as their insurer, was in a quasi-fiduciary relationship with Plaintiffs, as its insureds.

11. State Farm, as their insurer, had a duty to promptly and proactively investigate, evaluate, adjust and pay Plaintiffs' claims.

12. State Farm, as their insurer, had a duty to assist Plaintiffs with their claims.

13. State Farm, as their insurer, had a duty to be fair to Plaintiffs.

14. Plaintiffs were injured on September 17, 2014 in a collision caused by an underinsured motorist.

15. Michelle Clifton was driving her 1998 Dodge Caravan, and her children, Taegen Clifton and Kealan Clifton, were passengers in the rear seat on as they were traveling south on Main Avenue in Durango, Colorado on September 17, 2014.

16. Plaintiffs' vehicle came to a stop in the traffic from the stoplight at the intersection of Main Avenue and 17th Street, and a 2002 Ford Explorer, driven by Amaryah Wallace, came to a stop behind it.

17. The collision was caused by Christopher D. Hedges, the underinsured motorist, who was driving south on Main Avenue at an excessive speed and failed to stop. As a result, he crashed into the rear of Ms. Wallace's vehicle with his 1984 Ford F-250 truck, thrusting Ms. Wallace's vehicle into the rear of Plaintiffs' vehicle, and pushing it into the rear of the vehicle in front of it.

18. Mr. Hedges was solely liable for the collision.

19. The collision caused by Mr. Hedges was a very significant force. The collision caused extreme damage to the rear of Ms. Wallace's vehicle, moderate damage to the front of her vehicle, moderate damage to the rear of the Clifton vehicle, and slight damage to the front of the Clifton vehicle.

20. As a result of the collision caused by Mr. Hedges, Michelle Clifton suffered severe injuries, including bulging discs at C4-5 and C5-6; right C6 radiculopathy; chronic neck pain with cervicogenic and occipital headaches; right shoulder and scapular pain stemming from a C6 nerve root irritation from her C5-6 disc protrusion; and, persistent neck pain, headaches and occipital neuralgia from the deeper ligamentous and muscle stretching and tearing.

21. Michelle Clifton's injuries were determined to be permanent by Dr. David Silva, a spinal surgeon with Animas Spine, who examined and treated her injuries. Dr. Silva therefore placed her on permanent restrictions with a maximum lifting capacity of 30-35 lbs on an occasional basis, and a limitation of cervical activities; including an avoidance of repetitive cervical extension and rotation activities.

22. Michelle Clifton has incurred medical expenses in the amount in excess of $43,270.41 for the treatment of the injuries she suffered as a result of the collision, and she will continue to incur further medical expenses.

23. As a further result of the collision caused by Mr. Hedges, Michelle Clifton suffered pain, a loss of enjoyment of life, and mental anguish. Michelle Clifton will continue in the future to suffer pain, a loss of enjoyment of life, and mental anguish.

24. As a further result of the collision caused by Mr. Hedges, Michelle Clifton has been unable to perform household services she performed prior to the collision.

25. As a result of the collision caused by Mr. Hedges, Taegen Clifton suffered severe injuries, including include persistent cervical myofascial and myoligamentous pain and tightness; and moderate tightness and discomfort with deeper pressure over the right paraspinal muscles from C4 through the cervical/thoracic junction and lateral along the trapezius border.  As a result of her injuries, she has limitation with cervical rotation and lateral side bending.

26. Taegen Clifton's injuries were determined to be permanent by Dr. David Silva, a spinal surgeon with Animas Spine,  who examined and treated her injuries.

27. Plaintiffs have incurred medical expenses in the amount of in excess of $22,491.00 for the treatment of the injuries Taegen Clifton suffered as a result of the collision, and she will continue to incur further medical expenses.

28. As a further result of the collision caused by Mr. Hedges, Taegen Clifton suffered pain, a loss of enjoyment of life, and mental anguish. Taegen Clifton will continue in the future to suffer pain, a loss of enjoyment of life, and mental anguish.

29. As a result of the collision caused by Defendant Hedges, Kealan Clifton suffered severe injuries, including a cervical strain and sprain that resulted in chronic neck pain, cervogenic headaches, and occipital neuralgia.

30. Plaintiffs have incurred medical expenses in the amount of $4,760.00 for the treatment of the injuries Kealan Clifton suffered as a result of the collision.

31. As a further result of the collision caused by Mr. Hedges, Kealan Clifton suffered pain, a loss of enjoyment of life, and mental anguish.

32. On or about September 17, 2014, Plaintiffs notified State Farm of the collision caused by Mr. Hedges.

33. Plaintiffs' attorney sent State Farm a letter of representation for their claims on October 8, 2015.

34. An action was commenced on behalf of Plaintiffs against Mr. Hedges in the State of Colorado District Court for the County of La Plata County, Case No. 2016CV30038, on

March 4, 2016 as a result of their injuries, damages and losses resulting from the collision caused by Mr. Hedges.

35. State Farm failed to timely or reasonably investigate and evaluate Plaintiffs' claim for UM coverage under the insurance policy.

36. State Farm had complete and unfettered access to any and all data needed to arrive at the calculations of past medical expenses and future medical expenses, other economic losses, non-economic losses, permanency, and physical impairment.

37. On February 12, 2016, Plaintiffs provided to State Farm copies of the settlement offers submitted to Mr. Hedges's insurer on February 4, 2016, with the supporting documents, including the medical records and bills, for the purpose of evaluating Plaintiffs' potential UM claims.

38. On February 12, 2016, Plaintiffs further provided to State Farm Authorizations for Release of Information from each of the Plaintiffs, and the completed Medical Provider Information requested by State Farm to evaluate Plaintiffs' potential claim for UM coverage under the insurance policy.

39. State Farm failed to use the Authorizations for Release of Information for each of the Plaintiffs, and Medical Provider Information provided by Plaintiffs on February 12, 2016 to investigate and evaluate Plaintiffs' claims for UM coverage under the insurance policy.

40. On March 8, 2016, after the commencement of the action against Mr. Hedges, it was disclosed to Plaintiffs that the effective insurance policy had the minimum bodily injury liability limits under Colorado law of $25,000 per person and $50,000 per accident, and that there were remaining policy limits of $47,736 after liability payment to Ms. Wallace. Progressive Insurance, the insurer, offered $47,736, the remaining policy limits, to settle Plaintiffs' claims against Mr. Hedges and its insured.

41. On March 9, 2016, Plaintiffs requested consent from State Farm to settle their claims against Mr. Hedges pursuant to the policy with State Farm.

42. On March 18, 2016, Plaintiffs requested the payment of UM benefits from State Farm after Plaintiffs learned that Mr. Hedges's insurance coverage would not cover all of their damages and losses.

43. State Farm sent a letter, dated April 1, 2016, that gave Plaintiffs written consent under their policy with State Farm to settle their claims against Mr. Hedges.

44. On April 19, 2016, State Farm, without any reasonable investigation and evaluation of Plaintiffs' UM claims, made bad faith offers of UM benefits in the amounts of $5,000.00

        to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton to grossly under-pay Plaintiffs' UM claims which were tantamount to denial of the claims.

45. On May 9, 2016, Plaintiffs received the settlement payment from Mr. Hedges's insurance company, and $24, 641.32 was paid to Michelle Clifton for her damages, $17,495.24 was paid to Taegen Clifton for her damages and $5,599.44 was paid to Kealan Clifton for his damages .

46. On June 3, 2016, Plaintiffs rejected State Farm's bad faith offers of UM benefits in the amounts of $5,000.00 to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton to grossly under-pay Plaintiffs' UM claims, reduced their UM claims, and requested detailed written valuations of Plaintiffs' UM claims from State Farm if it was unwilling to pay their reduced UM claims.

47. On June 29, 2016, State Farm continued to fail to make any reasonable investigation and evaluation of Plaintiffs' UM claims, and made bad faith offers to grossly under-pay Plaintiffs' UM claims in the amounts of $6,000.00 to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton which were tantamount to denial of the claims.

48. State Farm further did not include the detailed written valuations of Plaintiffs' UM claims that were requested by Plaintiffs in the letter of June 3, 2016.

49. On July 15, 2016, Plaintiffs rejected State Farm's bad faith offers of $6,000.00 to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton to grossly under-pay Plaintiffs' UM claims set forth in its letter of June 29, 2016, reiterated their reduced UM claims from their June 3, 2016 letter, and once again requested detailed written valuations of Plaintiffs' UM claims from State Farm if it was unwilling to pay their reduced UM claims.

50. State Farm provided a brief and undetailed summary of its valuation of Plaintiffs' UM claims in its letter of July 28, 2016, but State Farm's valuation did not include the correct amount of past medical expenses based on State Farm's own records, omitted ongoing and future medical expenses, omitted expenses for loss of home services, omitted losses for permanent injury, and grossly undervalued the non-economic damages.

51. On August 30, 2016, Plaintiffs again requested payment of their UM claims from State Farm, and submitted additional medical records to support their the amount requested.

52. On September 15, 2016, Pattie Oligney, the State Farm Claims Representative, verbally confirmed that State Farm deemed Mr. Hedges solely liable for Plaintiffs' claims, that it did not request any further information from Plaintiffs for the evaluation of their UM claims, and that State Farm had not had any doctor or other medical professional review the Plaintiffs' medical records for its evaluation of their UM claims.

53. On September 15, 2016, Pattie Oligney, the State Farm Claims Representative, verbally made the bad faith offers to grossly under-pay Plaintiffs' UM claims again in the amounts of $6,000.00 to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton which were tantamount to denial of the claims.

54. The State Farm bad faith offers to Plaintiffs on September 15, 2016, were once again made without any timely or reasonable investigation and evaluation of Plaintiffs' UM claims.

55. The statements that were verbally made by Pattie Oligney, the State Farm Claims Representative, on September 15, 2016, that State Farm deemed Mr. Hedges solely liable for Plaintiffs' claims, that it did not request any further information from Plaintiffs for the evaluation of their UM claims, and that State Farm had not had any doctor or other medical professional review the Plaintiffs' medical records for the evaluation of their UM claims were confirmed by letter on behalf of Plaintiffs on September 16, 2016. The letter requested that State Farm advise Plaintiffs if the statements were inaccurate, and State Farm did not challenge the accuracy of any of the statements.

56. On September 29, 2016, Plaintiffs requested that State Farm pay to them the UM benefits that State Farm conceded was owed to Plaintiffs through its offers of $6,000.00 to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton.

57. State Farm ultimately paid a reduced amount of the conceded UM benefits to Plaintiffs in response to Plaintiffs' September 29, 2016 request in the amounts of $5,000.00, reduced from its prior offer of $6,000.00, to Michelle Clifton, $2,000.00 to Taegen Clifton, and $2,000.00 to Kealan Clifton.

58. State Farm had setoff the against Plaintiffs' UM claims the amount of MedPay benefits it had paid on behalf of Plaintiffs for the treatment of their injuries based on lower court rulings, but the Colorado Supreme Court ruled on November 7, 2016, in the case *Calderon v. American Family Mutual Insurance Company*, that C.R.S. §10-4-609(1) bars the setoff of MedPay payments against UM claims by the insurer.

59. On November 10, 2016, Plaintiffs requested that State Farm pay the amount of the MedPay benefits that it had setoff against Plaintiffs' UM claims as of the date in the amount of $25,000.00 to Michelle Clifton, $17,349.16 to Taegen Clifton, and $4,116.91 to Kealan Clifton.

60. State Farm failed to timely respond to the November 10, 2016 request for payment of the amount of the MedPay benefits that it had setoff against Plaintiffs' UM claims, and Plaintiffs, and Plaintiffs sent another letter to State Farm on January 26, 2017 again requesting the payment of the MedPay benefits that it had setoff against Plaintiffs' UM claims.

61. State Farm refused to pay the amount of the MedPay benefits that it had setoff against Plaintiffs' UM claims, but paid Michelle Clifton the amount of $11,928.48 via a check dated February 6, 2017, a delay of 88 days from Plaintiffs' initial request for the payment of the setoff, and paid to Taegen Clifton the amount of $6,201.76, on April 5, 2017, a delay of 146 days from Plaintiffs' initial request for the payment of the setoff. No payment was made for the amounts of MedPay benefits that State Farm had setoff against Kealan Clifton's UM claim.

62. On September 27, 2017, Plaintiffs once again requested that State Farm pay their UM claims, and Plaintiffs provided State Farm updated medical records and permanent impairment ratings for Michelle Clifton and Taegen Clifton from Dr. Silva.

63. Plaintiffs calculated Michelle Clifton's damages for her noneconomic losses, economic losses and permanent physical impairment total in excess of $200,000.00, and therefore requested the prompt payment of her remaining balance of the underinsured motorist benefits policy limits in the amount of $83,071.52 ($100,000.00 less the prior payments of underinsured motorist benefits in the amounts of $5,000.00 on November 18, 2016 and $11,928.48 on February 6, 2017) in their September 27, 2017 request.

64. No reasonable insurer would have calculated Michelle Clifton's uncompensated damages at less than her remaining balance of the underinsured motorist benefits policy limits in the amount of $83,071.52.

65. Plaintiffs calculated Taegen Clifton's total damages for her noneconomic losses, economic losses and permanent physical impairment in excess of $125,000.00, and therefore requested the prompt payment of her remaining balance of the underinsured motorist benefits policy limits for her in the amount of $91,798.24 ($100,000.00 less the prior payments of underinsured motorist benefits in the amounts of $2,000.00 on October 19, 2016 and $6,201.76 on April 5, 2017) in their September 27, 2017 request.

66. No reasonable insurer would have calculated Taegen Clifton's uncompensated damages at less than her remaining balance of the underinsured motorist benefits policy limits in the amount of $91,798.24.

67. Plaintiffs calculated Kealan Clifton's total damages for his noneconomic losses and economic losses to be $15,742.00, and therefore requested the prompt payment of the balance of underinsured motorist benefits for him in the amount of $8,142.56 (his damages less the payment in the sum of $5,599.44 from Progressive Insurance, and the prior payment of underinsured motorist benefits in the amounts of $2,000.00 on October 19, 2016) in their September 27, 2017 request.

68. No reasonable insurer would have calculated Kealan Clifton's uncompensated damages at less than the amount of $8,142.56.

69. State Farm failed to timely respond to Plaintiffs' request for payment of UM benefits in their September 27, 2017 letter, a telephone call was therefore made on behalf of Plaintiffs on October 31, 2017 to Brenda Robertson, the State Farm Claims Representative, and the telephone voice message was not returned.

70. Therefore, another telephone call was therefore made on behalf of Plaintiffs on November 6, 2017 to Brenda Robertson, the State Farm Claims Representative, and a telephone voice message was left. Brenda Robertson, the State Farm Claims Representative, returned the call later in the day on November 6, 2017, and it was confirmed that State Farm had received the September 27, 2017 request for payment of UM benefits, and that State Farm did not require anything else to respond to Plaintiffs' request for payment of UM benefits.

71. State Farm continued to delay in responding the Plaintiffs' request for payment of UM benefits set forth in their September 27, 2017 letter, and therefore a letter, dated November 20, 2017, was sent on behalf of Plaintiffs to State Farm requesting the prompt payment of the requested UM benefits.

72. Notwithstanding that State Farm had been provided Authorizations for Release of Information from Plaintiffs on February 12, 2016, nearly 22 months prior, State Farm responded that it needed Plaintiffs' treatment records for three years prior to the collision and MRIs from April 28, 2015, and requested another set of Authorizations for Release of Information from Plaintiffs to obtain the information.

73. State Farm had unreasonably delayed the investigation and evaluation of Plaintiffs' UM claims for nearly 22 months since it failed to use the Authorizations for Release of Information from Plaintiffs had been provided to it on February 12, 2016 to obtain Plaintiffs' treatment records for three years prior to the collision and MRIs from April 28, 2015.

74. State Farm's unreasonableness and bad faith is evident from its statements on September 15, 2016 and November 6, 2017 that it had all medical records and information necessary to evaluate Plaintiffs' UM claims, yet it requested another set of Authorizations for Release of Information from Plaintiffs on December 11, 2017 to obtain Plaintiffs' treatment records for three years prior to the collision and MRIs from April 28, 2015.

75. Notwithstanding State Farm's unreasonable delays and bad faith, Plaintiffs obtained copies of the April 28, 2015 MRIs from Animas Surgical Hospital, and sent them on December 14, 2017. Plaintiffs further signed and send another set of Authorizations for Release of Information from Plaintiffs on January 3, 2018.

76. On February 14, 2018, State Farm again made bad faith offers to grossly under-pay Plaintiffs' UM claims; this time in the amounts of $8,071.52 to Michelle Clifton,

        $3,999.24 to Taegen Clifton, and $1,000.00 to Kealan Clifton which were tantamount to denial of the claims.

77. State Farm unreasonably delayed the payment of UM benefits to Plaintiffs.

78. State Farm knew its delay in the payment of UM benefits to Plaintiffs was unreasonable, and/or recklessly disregarded the fact that its delay was unreasonable.

79. State Farm's unreasonable delay in the payment of UM benefits to Plaintiffs caused them damages.

80. State Farm knew its denial of the payment of UM benefits to Plaintiffs was unreasonable, and/or recklessly disregarded the fact that its denial was unreasonable.

81. State Farm's unreasonable denial in the payment of UM benefits to Plaintiffs caused them damages.

82. State Farm unreasonably investigated, evaluated and attempted to under-pay the Plaintiffs' claims.

83. State Farm knew its investigation, evaluation and attempt to under-pay Plaintiffs' claims were unreasonable, and/or recklessly disregarded the fact that its investigation, evaluation and attempt to under-pay Plaintiffs' claims were unreasonable.

84. State Farm's unreasonable investigation, evaluation and attempt to under-pay Plaintiffs' claims caused them damages.

85. State Farm purposefully took an adversarial approach in investigating, evaluating, and paying Plaintiffs' claims. Rather than fulfilling its legal contractual obligations to the Plaintiffs, State Farm took its actions to pressure them to take less, and never considered their rights or feelings.

## **FIRST CLAIM FOR RELIEF**
### (Breach of Insurance Contract)

86. Plaintiffs incorporate by reference all allegations set forth above.

87. The insurance policies State Farm issued for the benefit of Plaintiffs that were in effect on September 17, 2014 are an insurance contract.

88. State Farm breached the insurance contract since it failed to duly and timely delayed, denied, investigate, evaluate and pay Plaintiffs' claims for UM benefits under the insurance policies it issued for their benefit in effect on September 17, 2014.

89. As a direct and proximate result of State Farm's breach of contract the insurance contract, Plaintiffs have suffered damages in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

90. Plaintiffs incorporate by reference all allegations set forth above.

91. State Farm breached the insurance contract in bad faith since it unreasonably delayed, denied, investigated, evaluated and attempted to under-pay Plaintiffs claim for UM benefits under the insurance policies it issued for the benefit of Plaintiffs in effect on September 17, 2014.

92. State Farm knew that its delay, denial, investigation, evaluation and attempt to under-pay Plaintiffs' claims were unreasonable, or, at least, State Farm recklessly disregarded the fact that its delay, denial, investigation, evaluation and attempt to under-pay Plaintiffs' claims were unreasonable.

93. As a direct and proximate result of State Farm's bad faith breach of contract the insurance contract, Plaintiffs have suffered damages in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. §10-3-1115)

94. Plaintiffs incorporates by reference all allegations set forth above.

95. State Farm unreasonably delayed and denied payment to Plaintiffs for UM benefits under the insurance policies it issued for the benefit of Plaintiffs in effect on September 17, 2014.

96. As a direct and proximate result of State Farm's violation of C.R.S. §10-3-1115, Plaintiffs have suffered damages in an amount to be proved at trial, and is entitled to an award of two times the amount of UM benefits to which they are entitled and award of their attorney's fees and costs pursuant to C.R.S. §10-3-1116.

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against State Farm for actual damages in an amount which will reasonably compensate them for their damages, including compensation for:

    a. Non-Economic losses incurred to the present time, or which will probably be incurred in the future;

    b. Economic losses incurred to the present time, or which will probably be incurred in the future;

    c.      General damages resulting from State Farm's conduct;

    d.      Special damages resulting from State Farm's conduct;

    e.      Compensatory damages that Plaintiffs is entitled to for bad faith;

    f.       Two times the covered benefit, pursuant to C.R.S. 10-3-1116(1);

    g.      Interest for wrongful withholding pursuant to C.R.S. 5-12-102;

    h.      Pre-judgment and post-judgment interest on the damages from the time and at the highest rate allowed by law;

    i.      Costs and attorney's fees as allowed by law, including C.R.S. §10-3-1116(1);

    j.      Such further relief as the Court deems proper.

Plaintiffs reserve the right to move to add exemplary damages pursuant to C.R.S. § 13-21-102.

Respectfully submitted this 16th day of April, 2018.

                              R. NICHOLAS PALMER,
                              ATTORNEY AT LAW, LLC

                              */s/ R. Nicholas Palmer*
By: _____
                              R. Nicholas Palmer, No. 13405
                              ATTORNEY FOR PLAINTIFFS

                              -and-

                              TAUSSIG & SMITH

                              */s/ John G. Taussig III*
By: _____
                              John G. Taussig III, No. 13496

Address of Plaintiffs:

2132 Crest view Drive
Durango, CO 81301