**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 18-cv-01231-MSK-STV

**MICHELLE CLIFTON,
T.C., a minor, and
K.C., a minor,**

      **Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

      **Defendant.**

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
RULE 702 MOTIONS**

---

**THIS MATTER** comes before the Court primarily pursuant to both sides' Motions to

Exclude Expert Testimony (**# 125, 127**), and the associated responses and replies.[1]

## FACTS

The operative facts of this case, while perhaps disputed in certain respects, are not

particularly complicated nor controversial. On September 17, 2014, the Plaintiffs were involved

in a chain-reaction rear-end auto accident, in which their vehicle was struck from behind by a

vehicle that itself was struck from behind by the driver who caused the accident. The Plaintiffs,

---

[1]      Also pending are the Plaintiffs' Moton for Extension of Time (**# 124**), which is denied as
moot insofar as the document for which the extension was sought has now been filed without
objection. The Plaintiff's initial Motion to Exclude (**# 126**), filed in an incomplete form and
superseded by the substantive motion at issue in this Opinion, is denied as moot. The Plaintiffs'
Motion to Change Venue (**# 128**) is denied as premature, as the Court will make decisions about
the appropriate site for trial based on the relevant considerations that exist at the time trial is
actually scheduled.

Ms. Clifton and her two minor children, sustained injuries as a result of the accident. After exhausting the policy limits of the driver at fault for the accident, Ms. Clifton made a claim on her own auto insurance policy, issued by Defendant State Farm, for additional Underinsured Motorist ("UIM") benefits.

A dispute has arisen between the parties regarding the nature, extent, and causation of the Plaintiffs' injuries, and thus the amount of UIM benefits to which the Plaintiffs are entitled. The Plaintiffs then commenced this action bringing three causes of action all under Colorado law: (i) breach of contract, based on State Farm's failure to pay benefits available under the policy; (ii) bad faith breach of insurance contract under common law; and (iii) violation of C.R.S. § 10-3-1115, based on State Farm's alleged unreasonable delay in paying benefits.

Both sides have designated witnesses to offer opinion testimony at trial pursuant to Fed. R. Evid. 702. In the instant motions, both sides seek to exclude certain testimony offered by the other's witnesses.

## ANALYSIS

### A.  Standard of review

Fed. R. Evid. 702 permits certain witnesses who have particularized knowledge, skill, training, or education (experts) to provide testimony in the form of opinions if four requirements are met: (i) the witness' expertise must be one that will help the trier of fact to understand the evidence or determine a fact at issue; (ii) the testimony is based on sufficient facts and data; (iii) the testimony is the product of reliable principles and methods; and (iv) the expert has reliably applied the principles and methods to the case. Rule 702 requires the trial court to "assess the reasoning and methodology of the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d

1212, 1222 (10ᵗʰ Cir. 2003).  The goal of a Rule 702 analysis is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The proponent of the witness bears the burden of demonstrating that the proffered testimony meets the foundational requirements of Rule 702.  *U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1221 (D.Colo. 2008).

### B.  Insurance Industry Standards Witnesses

Both sides have designated witnesses to testify about standards that are observed within the insurance industry as a whole, as an insurer's compliance *vel non* with industry standards  is "the guidepost to assess the reasonableness of the insurer's conduct."  *Sandoval v. Unum Life Ins. Co. of America*, 952 F.3d 1233, 1239 (10ᵗʰ Cir. 2020).  Each side challenges certain opinions proffered by the other side's insurance standards witness, and the Court will take those challenges in turn.

Before proceeding, the Court pauses to observe that a line-by-line exegesis of the opposing expert's report is not a particularly effective method for bringing a Rule 702 challenge. Most expert reports are simply disclosure tools, not the script by which an expert will testify at trial.  Not every statement made in an expert's report will be uttered at trial, and frequently they contain offhand remarks, asides, explanations of methodology, facts that the expert has derived from other sources or simply assumed, and even arguments, little of which may actually be offered for admission at trial.

In contrast, Rule 702 is concerned with the admissibility of <u>opinions</u>, particularly the foundation upon which the opinion is based. Because there is no direct fit between the usual expert report and a Rule 702 challenge, it is essential for counsel to vigorously sift an expert's

report to separate the wheat - the expert's actual opinions - from the remaining chaff. In addition, counsel contemplating a Rule 702 motion must confer with opposing counsel in compliance with D.C. Colo. L. Civ. R. 7.1(A) to identify each opinion that the adversary actually intends to present at trial. Experts, like other witnesses, often have more to say than the party proffering them intends to present. It is particularly wasteful of the parties' and the Court's time to address challenges to a particular opinion that no one intends to present at trial in any event.

Finally, it is essential that parties identify, with precision, the particular opinion challenged and the specific Rule 702 grounds that apply. Typically, quoting the language of the expert's report is the most effective way of identifying the opinion in question. Paraphrasing of opinions often reveals misunderstandings or misinterpretations of the contents of the expert's report, and general descriptions of the expert's opinion introduce further ambiguity as to precisely what is being challenged. Further, objections that do not invoke the relatively narrow grounds of Rule 702 invariably result in denial of a motion with leave to raise non-Rule 702 objections at an appropriate time before or during trial.

1. Ellis Mayer

State Farm has proffered Mr. Mayer to opine on the issue of standard practices within the insurance industry. The Plaintiffs concede that Mr. Mayer possesses the qualifications necessary to express opinions on these matters. The Plaintiffs challenge the foundation for certain of Mr. Mayer's opinions.

(a). Comments regarding discovery responses

The Plaintiffs' first apparent complaint is that Mr. Mayer "seems to be critical of some of the discovery responses," and argues that "he should not be allowed to offer any opinions about discovery responses and objections." The Plaintiffs do not identify any particular statements by

Mr. Mayer in this regard, much less identify any particular <u>opinions</u> that Mr. Mayer states (and that State Farm intends to offer at trial) that fall within this category.  Because the Plaintiffs' motion fails to present any meaningful identification of the pertinent parts of the record or offer any meaningful argument on this point, the Court denies the Plaintiffs' request to exclude evidence on this issue.

(b).  <u>Opinions that the Plaintiffs have failed to cooperate</u>

The Plaintiffs contend that Mr. Mayer "seem[s] . . . to opine that Plaintiffs have failed to cooperate" with State Farm's requests for information.  Once again, the Plaintiffs do not point to any particular statement in the record that reflects this ostensible "opinion," much less offer arguments that such an opinion runs afoul of the criteria set forth in Rule 702.  Instead, the Plaintiffs argue that "State Farm never thought Ms. Clifton failed to cooperate and never raised that issue [and] has waived it," rendering "any opinions by Mr. Mayer on that subject . . . entirely irrelevant."

Rule 702 sets out the foundational requirements for admission of non-lay opinion testimony.  General issues of the relevance and arguments about the waiver of claims or defenses are not matters that immediately fall within its scope.  They do not entail an examination of whether Mr. Mayer's opinions are supported by a reliable methodology, adequate data, and the reasonable application of the methodology to that data. There are appropriate points in time to raise objections of this type closer to or during trial, but they are not properly presented through the lens of pre-trial determination of Rule 702 issues.  Accordingly, the Court denies the Plaintiffs' request to address these opinions at this time.

(c).  <u>Opinions regarding the burden of proof</u>

The Plaintiffs take issue with a statement by Mr. Mayer that an insured "has the burden to prove the underinsured motorist was negligent and the extent of the damages."  The Plaintiffs argue that this statement "usurps the Court's role and is simply wrong" and request that Mr. Mayer "be prohibited from opining an insured has any burden of proof in the context of a UIM claim."  In response, State Farm indicates that "it is anticipated this Court will instruct the jury on the appropriate burden of proof," which this Court infers to represent that State Farm does not intend to offer the opinion at trial.  Because it does not appear that State Farm intends to offer any such opinion, the Court denies the Plaintiffs' challenge to it as moot.

(d).  Opinions regarding differences of opinion as to valuation

The Plaintiffs offer an abbreviated argument challenging an "observ[ation]" by Mr. Mayer that "a difference of opinion as to valuation of a claim is not a refusal to pay it."  The Plaintiffs argue that "that is irrelevant," without elaborating further.  They seem to suggest that perhaps Mr. Mayer is "opining that State Farm has a reasonable basis for valuation," and that because "that is exactly what the jury will be asked to decide [ ], he can't opine on that."

First, it is unclear that this opinion will be offered at trial. State Farm agrees that "it will be a jury question to assess whether State Farm's actions were reasonable."  If not offered, the question of the adequacy of its foundation is moot.

Second, as stated, "a difference of opinion as to valuation of a claim is not a refusal to pay it" could be either a statement as to the law, or as to a material fact.  Generally stated, it sounds like a statement of law, about which Mr. Mayer may not opine.  *See generally Specht v. Jensen*, 853 F.2d 805, 806 (10th Cir. 1988).  However, if it is a statement about what State Farm did relative to industry standards regarding when and how valuation differences between insurers and insureds are treated as claim denials, it might be relevant to a material fact – that is, whether

6

State Farm complied with those insurance industry standards.  Although State Farm's behavior relative to industry standards would be related to an ultimate fact – whether State Farm's actions were reasonable -- Fed. R. Evid. 704(a) provides that an opinion is not objectionable just because it embraces an ultimate issue.

Because it is not clear whether State Farm intends to offer the statement that the Plaintiffs have specifically identified –  "a difference of opinion as to valuation of a claim is not a refusal to pay it" – nor is it clear for what purpose that opinion might ultimately be offered, the Court need not (and cannot) proceed further on the record set forth herein.  The objection is denied.

(e).  <u>Opinions that the Plaintiffs have been "overpaid"</u>

The Plaintiffs read – without particularly citing or quoting – Mr. Mayer's report to "offer[ ] an opinion that the Plaintiffs have been well compensated for their injuries and the State Farm 'overpaid' the claim."  The Plaintiffs appear to argue that Mr. Mayer's opinion on this point would be inadmissible under Rule 702 because Mr. Mayer did not base it on sufficient facts and data (because he "did not see 90+% of the claim file [and] reviewed no medical records"), or because he lacks a reasonable methodology for determining overpayment (because he "admits in his deposition he is not able to offer an opinion as to what a reasonable amount is for the Plaintiffs' damages").  The Plaintiffs also argue that "that would clearly usurp the role of the Court and jury."  In response, State Farm states that it "does not anticipating soliciting such an opinion from Mr. Mayer."  Because State Farm does not intend to offer any opinion regarding alleged "overpayment," the Plaintiffs' challenge to such an opinion is overruled as moot.

(f).  <u>Opinions concerning the *Fisher* case</u>

The Plaintiffs challenge "five paragraphs where [Mr. Mayer] offers his opinions about partial payments of UIM benefits and the *Fisher*[2] case and concludes State Farm was within its rights in not paying undisputed benefits."  The Plaintiffs argue that such an opinion "goes to the heart of one of the claims [the jury] will be asked to decide."  State Farm responds (despite some confusion about what is being challenged) that Mr. Mayer "can opine with respect to industry standards that have come into play in Colorado since the *Fisher* case was handed down."

The Plaintiffs' failure to specifically articulate the opinion(s) they challenge here hampers the Court's ability to assess the issue.  Indeed, it appears that the Plaintiffs have paraphrased what they consider Mr. Mayer's specific opinion to be – "State Farm was within its rights in not paying undisputed benefits" – but no such statement appears in the referenced portion of Mr. Mayer's report.  Indeed, the report states the contrary: that *Fisher* (and Colorado law generally) "require[s] auto insurers to make partial payments on *undisputed* portions of UIM claims when other portions of the claim remain disputed [and] does not require the payment of disputed benefits."  *Docket* # 127-17 at 7 (emphasis in original, internal quotes omitted).  Mr. Mayer goes on to opine that "partial payments have been made for undisputed amounts in this claim, with only disputed claims remaining to be determined."  *Id.*

It is not clear whether the Plaintiffs have misunderstood Mr. Mayer's opinions, whether the Plaintiffs are arguing against the admissibility of a strawman opinion of their own creation, or whether the Plaintiffs are, in fact, challenging some other opinion of Mr. Mayer's (*e.g.* that payments Mr. Mayer believes to be "disputed" are, in fact, "undisputed").  The lack of

---

[2]      *State farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 502 (Colo. 2018), in which the Colorado Supreme Court held that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute."

specificity in the Plaintiffs' argument is enough to deny it on that ground alone. The Plaintiffs' apparent objections to any such opinion – that it "would not help the jury and goes to the heart of one of the claims" is a conclusory statement not tailored to the specifics of Rule 702. If the described opinion is one as to the law, it is not admissible. *Specht, supra.* If the opinion is conclusory, not based on any methodology or expertise, but instead upon a review of select information which may or may not be admissible at trial, it may be excluded as not benefiting the jury because it usurps its fact-finding role. *See e.g. U.S. v. Kearn*, 863 F.3d 1299, 1307-08 (10th Cir. 2017). Either type of objection can be raised at the appropriate time. Accordingly, the Court denies any Rule 702 challenge to the "opinions" addressed.

### (g). Opinions regarding medical records and the duty to cooperate

The Plaintiffs next contend that Mr. Mayer offers several opinions, again without specifically quoting or identifying the pertinent language. They contend that Mr. Mayer "talks about Plaintiffs' failure to provide certain medical records and the duty to cooperate," an opinion that the Plaintiffs argue is "irrelevant as State Farm never mentioned a failure to cooperate." They contend that Mr. Mayer "says State Farm was prejudiced" (presumably by the Plaintiffs' alleged failure to provide medical records) "but [identifies] no facts to support it." And they contend that Mr. Mayer "comments on what the medical records show, which he is not qualified to do." State Farm does not address this portion of the Plaintiffs' argument in its response brief.

The question of whether the Plaintiffs failed to provide certain medical records does not call for an expert opinion. It is a question of fact that may or may not be disputed[3]. The

---

[3]     Mr. Mayer's report actually states that "the Plaintiffs . . . [have not] provided medical authorizations at a meaningful time." Whether or not the Plaintiffs provided authorizations, and the time at which they did so, is simply a fact, not an opinion. The identification of whether an authorization was provided at a "meaningful" time can be said to present an opinion, but it is not

Plaintiffs' sole argument for excluding it is that State Farm allegedly waived any right to claim a failure to cooperate, rendering such an opinion "irrelevant."  As stated above, issues of waiver and relevance deriving therefrom are not matters within the scope of Rule 702 and are thus not properly presented for adjudication at this time.  The Plaintiffs may challenge the issue of waiver and the relevance of facts bearing on the issue of cooperation at the appropriate time before or during trial.

As to Mr. Mayer's opinion that "State Farm was prejudiced," the actual text of his report reads as follows: "[t]he failure to provide records creates an incomplete picture of Plaintiff Clifton's medical status and is therefore highly prejudicial to State Farm.  These records completely not only show similar conditions, but also show a potential psychological source [ ] of Clifton's extreme reaction. . . . that could have been explored by State Farm had Clifton been forthcoming."  *Docket* # 127-17 at 8.  The Plaintiffs' contend is that Mr. Mayer "identifies no facts to support" this opinion.  Rule 702 does not speak to the adequacy of facts to support an opinion, as juries are empowered to weigh the evidence presented.  However, the lack of a reliable methodology or sufficient experience can be a foundational defect under Rule 702. [4]

Here, contrary to the Plaintiffs' argument, Mr. Mayer's report makes clear the information that he relied upon to formulate his opinion.  Mr. Mayer notes that State Farm made several requests for the Plaintiffs to provide medical authorizations, with which the Plaintiffs

---

clear that the Plaintiffs are challenging the method by which Mr. Mayer purports to determine what a "meaningful" date for providing authorizations might be.

[4]     This is not a situation where the sufficiency of facts and data is at issue. The rule's reference to "sufficient facts and data" requires a quantitative, not qualitative, determination. Fed.R.Evid. 702, Advisory Committee Notes to 2000 Amendments; *see also United States v. Lauder*, 409 F.3d 1254, 1264 n. 5 (10th Cir.2005).  The Plaintiffs do not identify the necessary quantum of facts that is required by Mr. Mayer's methodology on this point, much less make a *prima facie* showing that Mr. Mayer failed to obtain that quantum.

failed to comply, *see id.* at 2, 3-4, 6 (identifying requests made on May 29, 2015; December 24, 2015; December 5, 2017 and December 14, 2018, with authorizations finally produced on November 22, 2019).  Mr. Mayer notes that records obtained in and after December 2019 reveal that Ms. Clifton had previously received medical treatment prior to the accident for conditions that are similar to the symptoms that she now attributes to the accident.  Thus, the record reflects that Mr. Mayer had some basis for his conclusion that the Plaintiffs failed to promptly produce medical authorizations and that State Farm was prejudiced (*i.e.* that it "could have [ ] explored" earlier the possibility that Ms. Clifton's claimed injuries from the accident predated that event) as a result. Because the record offers at least some explanation of the factual basis for this opinion (and the Plaintiffs' briefing does not materially argue the issue further), the question of what weight should be given to the opinion is left to the jury.  The Plaintiffs' objection is overruled on these grounds.

Finally, the Plaintiffs' argument that Mr. Mayer's "comments on what the medical records show" is not sufficient to identify any Rule 702 "opinion," much less demonstrate that Mr. Mayer is not qualified to form such an opinion.  The pertinent part of Mr. Mayer's report states simply that medical records obtained by State Farm "show similar conditions [and] a potential psychological source" for certain injuries claimed by Ms. Clifton.  Mr. Mayer may not have the expertise to opine as to <u>medical</u> similarity of conditions, but the parties agree that he has the requisite expertise to opine as to what records an <u>insurer</u> would consider worthy of further investigation.  Thus, this adequate foundation exists for this opinion to the extent that it is limited to Mr. Mayer's statement that the late disclosure of the specified medical records prejudiced State Farm because such records would have warranted further investigation.  Accordingly, the Court overrules the Plaintiffs' challenge.

(h).  <u>Further opinions about medical authorizations</u>

The Plaintiffs next argue that Mr. Mayer "offers more opinions about whether or not the Plaintiffs signed authorizations," without meaningfully identifying those opinions.  The crux of the Plaintiffs' argument appears to be that the authorizations in question exist in the claim file, but that Mr. Mayer was not aware of them because he was not provided with the full file.  The Plaintiffs argue that this error renders Mr. Mayer's opinions on this point "irrelevant."

This challenge is overruled for several reasons: the failure to adequately identify the particular opinions being challenged, general relevance challenges can be made at trial, and because the question of whether authorizations existed or not as of a particular date is a matter of fact, not opinion.

(*i*).  <u>Opinions regarding completeness of an investigation</u>

The Plaintiffs state that Mr. Mayer "talks about whether an investigation is complete," but do not identify what particular opinions on this subject that they challenge.  The Plaintiffs argue that these opinions – whatever they might be – are "irrelevant" because State Farm "confirmed it was not seeking any further information."  If any opinion on this subject is ultimately offered, its relevance can be challenged at trial.

(j).  <u>Concluding opinions regarding failure to cooperate and reasonableness</u>

Finally, the Plaintiffs contend that the conclusion section of Mr. Mayer's report "conclud[es] the insured failed to cooperate and State Farm was reasonable.  This usurps the role of the jury and the Court in addition to the other issues regarding failure to cooperate."  To the extent that these opinions are linked to industry standards and a methodology derived from Mr. Mayer's knowledge or experience – a ground the Plaintiffs do not challenge -- there is no

showing of a reason to exclude them under Rule 702.  Accordingly, any ostensible Rule 702 challenge to these opinions is denied.

(k).  Opinions in rebuttal report

The Plaintiffs challenge certain portions of Mr. Mayer's rebuttal report as well.  The Court will not extensively discuss these challenges, most of which similarly fail to meaningfully identify the opinions being challenged or the grounds for those challenges.  In most instances, the Plaintiffs' argument is simply that these opinions "usurp the Court's role," without offering any further elaboration on why.  These challenges are denied as falling outside the scope of Rule 702, as well as being inadequately-presented.

Embedded within these paragraphs, however, are two arguments that arguably raise Rule 702 issues.  First, the Plaintiffs assert that, in the rebuttal report, Mr. Mayer "offers opinions on what a soft tissue injury is, how causation is determined, [and] how permanency of an injury is determined," arguing that "he is not qualified to give" such opinions.  The Court declines the Plaintiffs' invitation to venture into Mr. Mayer's rebuttal report to locate the opinions in question.  Further, the Plaintiffs' cursory argument regarding Mr. Mayer's lack of qualifications (the Plaintiffs simply state that argument without elaborating whatsoever on what qualifications Mr. Mayer lacks) is simply insufficient to meaningfully present the matter to the Court for adjudication.  Accordingly, the Court denies the challenge to those opinions.

The second arguable Rule 702 objection is to an opinion by Mr. Mayer that "it was reasonable for State Farm to take 60 days to pay back the Plaintiffs," arguing that this opinion is "not tied to any insurance industry standard."  The Court understands the "not tied to any . . . standard" to be an argument that Mr. Mayer failed to articulate a methodology for his opinion that repayments within 60 days are reasonable.  But a review of Mr. Mayer's rebuttal report

13

clearly articulates Mr. Mayer's stated basis for that opinion.  Mr. Mayer states "There is no regulation of any kind that supports [the time frame urged by the Plaintiffs' expert.]  The only time frame that exists in the statutes is 'reasonable,' while the only time frame in any applicable insurance regulations is 60 days," to which he cites to Regulation 5-1-14.  Thus, Mr. Mayer has articulated the basis for his opinion that a 60-day period is reasonable – that it is derived from Regulation 5-1-14.  Because the Plaintiffs do not offer any further argument on this point, the Court overrules their challenge to this opinion.

Accordingly, the Plaintiffs' challenges to Mr. Mayer's opinions are denied in their entirety.

### 2.  Elliott Flood

State Farm challenges certain opinions proffered by the Plaintiffs' insurance standards expert, Mr. Flood.

### (a).  State Farm made a "nuisance value offer"

State Farm cites to page 9 of Mr. Flood's report, which simply contains a heading entitled "Nuisance value offer," and proceeds to discuss Mr. Flood's disagreements with the components of a settlement offer that State Farm made in April 2016.  Mr. Flood then goes on to state that "State Farm made nuisance value offers to Ms. Clifton and her children" and that "no reasonable insurer . . . could in good faith reached the conclusion that this was just a nuisance value claim."

State Farm argues that Mr. Flood has articulated no methodology by which one can determine whether an offer is a "nuisance value offer" and that the opinion should therefore be excluded.  In response, the Plaintiffs state that "such an opinion is not stated in his report" and that they "have not endorsed him to testify that State Farm 'improperly made a nuisance value

offer'."  Because it does not appear that the Plaintiffs intend to offer the opinion that State Farm

challenges, that challenge is overruled as moot.

(b).  <u>"It is common for people to initially avoid medical treatment"</u>

Mr. Flood's report acknowledges that the Plaintiffs did not seek medical treatment

immediately after the accident, but opines that "it is quite common, especially when injures are

not life-threatening, for people to choose going home to rest over telling law enforcement and

calling an ambulance."

State Farm argues that Mr. Flood articulates no methodology or the conclusion that such

behavior is "common."  In response, the Plaintiffs contend that Mr. Flood bases this opinion "on

his experience handling and reviewing thousands of injury claims, both as an insurance company

employee, a claim file auditor, and an expert" and that "it is based on his review of thousands of

similar claims over many years."  The Plaintiffs do not point to any evidentiary material

establishing these facts – *e.g.* an affidavit or deposition testimony from Mr. Flood attesting that

the source of this opinion is his experience in reviewing claim files.  In reply, State Farm argues

that, had it understood that Mr. Flood was stating that it was "common in claim files" to see such

behavior, it "could have explored the basis for this opinion in his deposition."[5]

According to the Plaintiffs, Mr. Flood's opinion about the frequency with which injured

individuals decline immediate medical attention is based on his experience in reviewing claim

files.  When experts "rely[ ] solely or primarily on experience, [they] must explain how that

experience leads to the conclusion reached, why that experience is a sufficient basis for the

---

[5]       The Court makes no findings regarding, and gives no weight to, arguments as to the
timeliness of expert disclosures for purposes of this Opinion.  Motions that seek to exclude
expert opinions due to the timeliness of disclosure are beyond the scope of Rule 702, and thus,
beyond the scope of the motions here.

opinion and how that experience is reliably applied to the facts." *U.S. v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014).  But without any evidentiary presentation as to Mr. Flood's experience and how it ties to this opinion, the Court is left without the required explanation.  The Plaintiffs' statement in their response – that Mr. Flood derives his opinion from reading numerous claims files, might be sufficient if <u>Mr. Flood</u> had said as much, but the Plaintiffs may not simply substitute their own assurances for Mr. Flood's.  Although Mr. Flood's qualifications are set forth in his initial report, that articulation of qualifications is not, of itself, sufficient to carry the Plaintiffs' burden.  It states that Mr. Flood "has over 30 years of experience in the insurance industry in auditing insurance operations and supervising claims investigations."  He states that "early in my career, I worked as an investigator and defense attorney for major insurers," but does not elaborate on the tasks he performed.  He states that in 1997, he "left law practice to work as an executive for an insurance company," where he "served as vice president of special investigations."  He does not describe all of the details of this position, stating only that "part of my job was to give expert testimony about industry customs, practices and standards."  Later, he transferred to executive positions involving internal auditing before becoming a consultant.  Mr. Flood's report does not specifically describe the extent to which he reviewed individual claim files at any point in his career, nor points to particular experience that would lead him to opinions about how common it is for accident victims to decline immediate medical assistance.

Because the burden is on the proponent of the witness – the Plaintiffs – to establish that the witness' opinions meet the foundational requirements of Rule 702, the Plaintiffs' failure to come forward with <u>evidence</u> that ties Mr. Flood's experience to this opinion requires that the Court exclude the opinion under Rule 702.  The objection is sustained.

(c). <u>Opinion regarding permanence of injuries</u>

Mr. Flood's report states that "[t]he industry standard is that if an insured has symptoms for a lengthy period, more than a year, it is probable the injury is permanent." State Farm argues that Mr. Flood "is not a medical expert and he is not qualified to opine on whether plaintiffs' injuries are permanent."

The Court does not understand Mr. Flood's report to be articulating a <u>medical</u> opinion regarding the permanence of injuries (to the extent that term "permanent" has any medical significance). Rather, it appears that Mr. Flood is stating that <u>insurance industry standards</u> treat symptoms that have existed for more than a year as "probabl[y]" indicating a permanent injury. State Farm does not dispute Mr. Flood's qualifications to opine as to insurance industry standards, and has not proffered contrary evidence that contends that no such industry standard exists. Accordingly, the objection is overruled.

(d). <u>Opinion regarding *Calderon* payments</u>

State Farm's motion asserts that Mr. Flood has proffered an opinion that "*Calderon* payments[6] were due 'one week' after the *Calderon* decision." This is not precisely what Mr. Flood's report states. The report reads:

> Initially, State Farm deducted $25,000 for medical payments as an offset. [When *Calderon* was decided in November 2016], State Farm delayed acting on the decision for approximately two months. . . There is no explanation in the claim file . . . for why it took more than two months when it should have happened within a week. When a reasonable insurer learns it has underpaid a claim and has withheld money owed to an insured, it should make the

---

[6] Prior to *Calderon v. American Family Mut. Ins. Co.*, 383 P.3d 676 (2016), it was a common practice for insurers to offset UIM benefits owed to insureds by the amount of medical payments the insurer had made on the insured's behalf directly to medical providers. In *Calderon*, the Colorado Supreme Court held that such setoffs violated state law. One assumes that, in claims that were in process at he time *Calderon* was decided, insurers then began making payments to insureds of previously-setoff funds.

> payment as soon as possible, and certainly no later than a week
> after learning of the underpayment.

State Farm argues that Mr. Flood fails to articulate any methodology or source for this opinion.  In response, the Plaintiffs argue that "these are industry standard opinions," that Mr. Flood "based them on reviewing thousands of similar claim files, the fact that there is no explanation in the claim file, or to date for the delay."  The Plaintiffs also argue that Mr. Flood "explains in his appendices those standards, including citing to Colorado law that supports them," although the Plaintiffs offer no citation to where in Mr. Flood's 99-page report and appendices such an explanation may be found.  *See Docket* # 127-7.

The opinion lacks foundation for essentially the same reasons as Mr. Flood's opinion (b) above.  Mr. Flood's report simply proffers the opinion, but does not indicate where or how the "one week for payment" deadline was derived.  The Plaintiffs argue that Mr. Flood is expressing an "industry standard," but Mr. Flood's report does not characterize it as such nor explain the basis for his knowledge of such a standard.

Once again, the Plaintiffs attempt to fill the hole in the record by suggesting that Mr. Flood became aware of such a standard by reviewing claim files, but they do not – and cannot – point to evidentiary materials in which Mr. Flood makes such a representation on his own. Arguments by counsel cannot substitute for evidence and because the record contains no evidence that demonstrates that Mr. Flood's opinion that State Farm was required to remit payments within one week of the *Calderon* decision, the Court excludes that opinion under Rule 702.

### (e).  "Radiologist cannot opine on permanency"

State Farm objects to an opinion of Mr. Flood regarding the ability of radiologists to opine on the issue of permanency of an injury, but does not clearly recite the challenged opinion. State Farm does cite to a page of Mr. Flood's report. The pertinent passage appears to be "Any reasonable insurer knows that a radiologist is not a qualified doctor to give opinions on permanence or future treatment." State Farm argues that Mr. Flood "is not a medical doctor and cannot opine on what is or is not within the province of a medical doctor to opine about." The Court treats that objection as being one to Mr. Flood's qualifications to express the opinion under Rule 702(1). The Plaintiffs respond that Mr. Flood is reciting a standard that is observed in the insurance industry.

For the reasons stated with regard to opinion (c), the Court rejects State Farm's challenge to this opinion. Although Mr. Flood lacks qualifications to opine as to medical matters, State Farm does not dispute that he is qualified to testify about standards and practices that are observed generally within the insurance industry. Mr. Flood's opinion that a "reasonable insurer" would not rely on a radiologist's opinions as to permanence of injuries is a statement of standards that are generally observed within the insurance industry. Because State Farm does not otherwise challenge Mr. Flood's ability to render such an opinion on insurance industry practices, its challenge to this opinion is overruled.

(f). "Whether the Plaintiffs have permanent impairment"

State Farm objects to an opinion by Mr. Flood in his rebuttal report, identified only by reference to the heading above and a page number within that report. The pertinent passage in the report reads:

> Colorado law allows an inference of permanency based on long-lasting symptoms. Ms. Clifton[ ] had symptoms for several years, from the 2014 accident forward. In addition, the claim file has direct medical evidence from Dr. Silva that the injuries were

> permanent.  . . . The available records support [a conclusion that]
> the injuries were permanent. [Thus,] State Farm lacked any good
> faith basis to state that Ms. Clifton's injuries were not permanent.

State Farm argues that Mr. Flood "who is not a doctor, is not qualified to opine on [this] point."

Once again, a careful review of Mr. Flood's report reveals that he is not offering a medical opinion as to the permanence of injuries.  His opinion is encapsulated in the penultimate sentence of the quoted text: that a review of the claim file ("the available records") reveals evidence that supports the conclusion that Ms. Clifton's injuries were permanent (and an absence of evidence for the contrary position).

To the extent that this is offered as a medical opinion that Ms. Clifton's injuries were permanent, State Farm is correct that Mr. Flood lacks the expertise to draw such conclusion. However, if offered as an opinion that a reasonable claims adjuster reviewing the claims record here would, under industry standards, conclude that Ms. Clifton's injuries were permanent, no medical expertise is required.  Instead, this opinion is based upon Mr. Flood's experience in the insurance industry, which State Farm does not specifically challenge in this context.

As to the second opinion – that State Farm lacked any good faith basis to state that Ms. Clifton's injuries were not permanent – the same reasoning applies.  It is based upon the records reviewed and Mr. Flood's expertise.  It is essentially an extension of the industry standards analysis.  Its weight can be assessed by the jury.  The objection is overruled.

Accordingly, State Farm's motion is granted in part, excluding Mr. Flood's opinions referenced in sections (b) and (d) above, and overrules its objections in the remaining respects.

## C.  Medical expert

The Plaintiffs also seek to exclude certain opinions proffered by State Farm's medical expert, Douglas Scott, a specialist in Occupational Medicine.  Dr. Scott opines generally about

Ms. Clifton's injuries, causation, and prognosis. The Plaintiffs object to several ostensible opinions of Dr. Scott.

(a). Opinions regarding air bags

The Plaintiffs point to a passage in Dr. Scott's report identified as a "Comment" about the subject accident. Dr. Scott states that "Most airbags are designed to deploy at an equivalent front impact into a rigid wall at about 16 m.p.h. for belted occupants." Because it appears to be undisputed that Ms. Clifton's airbag did not deploy, Dr. Scott opines that "the bump to the rear of Ms. Clifton's vehicle did not cause the vehicle to be pushed forward at more than 16 m.p.h." The Plaintiffs point out that Dr. Scott acknowledged that he has no expertise in matters relating to the activation of airbags and that he testified that he "took that [information] right off the internet." State Farm argues that pursuant to Fed. R. Evid. 703, Dr. Scott may rely upon "those kinds of facts or data" that "experts in the particular field" – *e.g.* medicine – "would reasonably rely," and that information about the speed at which airbags deploy falls within that category.

Dr. Scott's testimony on this point is what this Court in *Crabbe* referred to as a factual "assumption" that renders his opinion "conditional." 556 F.Supp.2d at 1224. As *Crabbe* explained, an expert's "reliance on assumptions does not necessarily preclude the opinion from having an adequate foundation under Rule 702," but to the extent that the correctness of the assumption affects to the operation of the expert's methodology, "the accuracy of the assumption is an issue for trial." *Id.* Proof – through another witness competent to testify as to matters about the design and functioning of airbags – that airbags actually deploy at speeds higher than 16 m.p.h., or that Ms. Clifton's airbags were defective and should have deployed but did not, or other evidence that calls into question Dr. Scott's assumption about the speed of impact to Ms. Clifton's car might call the reasonableness of his medical opinions about the scope of the

Plaintiffs' injuries into question as well.  A small error by Dr. Scott in his assumption about he impact speed might affect the weight that the jury gives his medical opinions that are based, in part, on that assumption.  A large error might so fundamentally undercut his methodology that his medical opinions as a whole might no longer be reliable.  But the mere fact that Dr. Scott made a factual assumption as part of his methodology does not, of itself, warrant exclusion of his opinions.  Thus, the Court denies the Plaintiffs' request to exclude Dr. Scott's factual assumption (not opinion) about the speed of impact.

(b).  <u>Information from the traffic accident report</u>

The Plaintiffs' motion refers to "a section [in Dr. Scott's report] on the Traffic Accident Report," arguing that "[a]ll of that should be excluded."  The Plaintiffs argue that Dr. Scott "is no more qualified than a jury to read and understand what is in an accident report."

The cited portion consists of a single paragraph (and a comment), that appears to recite what Dr. Scott read in the accident report.  It does not appear that Dr. Scott is offering any "opinions" with regard to this information.  He recites it simply to identify the facts that he reviewed and relied upon.  As such, this recitation is not subject to review under Rule 702.  To the extent Dr. Scott's recitation of the facts as he understood them is inconsistent with evidence that is produced at trial, that discrepancy may affect the weight (or, in extreme cases, the outright admissibility) of the medical opinions that Dr. Scott does proffer.  But Rule 702 does not provide a mechanism to strike an expert's recitation of the facts they understood to exist.  Therefore, this challenge is denied.

(c).  <u>Statements regarding Worker's Compensation treatment guidelines</u>

The Plaintiffs seek to exclude "a discussion of how Colorado's Division of Worker's Compensation Medical Treatment Guidelines direct treatment."  They contend that, because Dr.

Scott acknowledged that this is not a Worker's Compensation case, the discussion is irrelevant as to the proper standard of care for Ms. Clifton's injuries.

Dr. Scott's report explains that the guidelines "provide[ ] an excellent consensus discussion of evaluation and treatment of neck pain."  He proceeds to recite certain of those guidelines and occasionally compare them to the treatment that Ms. Clifton actually received or the results she displayed.  In essence, Dr. Scott opines that the Worker's Compensation guidelines provide medically-accepted standards for assessing and treating neck pain generally, regardless of whether the injury is being assessed for Worker's Compensation or other purposes.  This is, at bottom, a statement of a methodology that Dr. Scott used to evaluate the reasonableness and success of medical treatments that Ms. Clifton received from her own medical providers.

In order to demonstrate that the methodology chosen by Dr. Scott to form his opinions is unreasonable, such that the resultant opinions should be excluded under Rule 702(2), the Plaintiffs would need to produce evidence to refute Dr. Scott's assertion that the Worker's Compensation guidelines reflect a broader medical consensus about treating such injuries.  In other words, the Plaintiffs would need to come forward with evidence that medical providers in Dr. Scott's field generally reject the principles articulated in those guidelines when applied to treatment of injuries outside the Worker's Compensation realm.  Not only have the Plaintiffs failed to produce such evidence, State Farm has adduced evidence that demonstrates that one of Ms. Clifton's own treating providers testified that the "same concepts" found in the Worker's Compensation guidelines "appl[y] across the board" to medical treatments for any purpose.  As such, the record reflects that Dr. Scott's reliance on the Worker's Compensation guidelines reflects a reasonable methodology for assessing the treatment Ms. Clifton received, such that the

opinions Dr. Scott derived from that methodology are permissible under Rule 702.  Accordingly, the Plaintiffs' challenge to those opinions is denied.

### (d).  Ms. Clifton "embellished" her injury

Dr. Scott's report states that Ms. Clifton "remark[ed] to me that she felt 'battered'" as a result of the accident.  Dr. Scott states that such an assertion "is not credible given the mechanism of injury and the forces of impact of the accident.  In my opinion, this remark is embellished."  The Court understands the Plaintiffs to seek to exclude Dr. Scott's opinions about Ms. Clifton's credibility.  The Plaintiffs argue that Dr. Scott "is not an expert in credibility to comment on another witness' credibility."

This is a situation where more careful phrasing by the expert, and more discussions between the parties prior to filing a motion, could have ameliorated the dispute.  As discussed above, Dr. Scott has made certain assumptions about the speed of impact and other forces at work, and applied those assumptions to his medical expertise in order to derive an opinion about the physiological injuries that Ms. Clifton claims to have suffered.  It does not appear that the Plaintiffs challenge Dr. Scott's ability to render opinions that Ms. Clifton suffered a "minor cervical neck muscle strain" due to the accident and that that injury "probably full[y] resolved" by May 2015.  Dr. Scott may even testify that Ms. Clifton's own description of her injuries is not consistent with his determinations regarding the medical evidence of those injuries.  But the Court agrees with the Plaintiff that Dr. Scott does not have the qualifications to render opinions that Ms. Clifton is "not credible" and has "embellished" her statements about that injury.  Dr. Scott does not claim to have expertise in, nor a methodology for, determining whether a person has "embellished" a fact.  Thus, the Court grants the Plaintiffs' motion to the extent that Dr. Scott may not opine that Ms. Clifton was "not credible" or "embellished" her version of events.

He may, however, opine that the medical evidence is not consistent with Ms. Clifton's own description of events.

          (e).  <u>Causation of current symptoms</u>

Dr. Scott opines that "Ms. Clifton suffered no permanent injury from the [ ] accident and her current symptoms and problems are related to either fibromyalgia, chronic pain disorder confounded by psychological factors, or possibly a somatization disorder." The Plaintiffs argue that this opinion should be excluded because Dr. Scott lacks the qualifications to render it and because he did not apply a reliable methodology to derive it.

Dr. Scott testified at his deposition that this opinion was the product of a methodology of "differential diagnosis." As explained in *Hall v. Conoco, Inc.*, 886 F.3d 1308, 1311 (10th Cir. 2018), the process of differential diagnosis "rules in all scientifically plausible cases of the injury and then rules out the least probable causes until only the most likely cause remains." Or, as Dr. Scott explained, "a physician will list possibilities to explain symptoms or to explain signs." It appears that Dr. Scott did just that, considering the possibility that Ms. Clifton's symptoms could be the result of injuries from the auto accident, but also entertaining the possibility that they could be caused by other conditions – such as fibromyalgia or chromic pain disorder or a somatization disorder -- that had been identified by other medical providers who had also treated her before the accident. Dr. Scott explained why he ultimately concluded that the accident was less likely a cause of the symptoms than the other possibilities: because the accident appeared to be a minor one, because Ms. Clifton had received treatment for many of the same symptoms before the accident, and because other diagnoses more readily explained why her symptoms would continue to be chronic and ongoing. Although the Plaintiffs argue that Dr. Scott admitted that he lacks the qualifications to diagnose conditions like fibromyalgia or a somatization

disorder, they have not come forward with evidence that indicates that a doctor engaging in the methodology of differential diagnosis must possess those qualifications in order to effectively perform that task. As Dr. Scott explained, the process of differential diagnosis is not intended to yield a conclusive diagnosis, but merely to focus attention, and thus further medical investigation, on the most probable explanations for a symptom. Thus, he stated, to determine whether a chronic pain disorder was indeed the cause of Ms. Clifton's symptoms, he would refer her to a psychiatrist or other practitioner qualified to make such a final diagnosis.

The Plaintiffs have not come forward with evidence to the contrary – *i.e.* an expert who testifies that differential diagnosis is not an acceptable methodology for determining that cause of symptoms, nor an expert who testifies that the practice of differential diagnosis can only be performed by a medical professional with the qualifications to diagnose every conceivable condition that fits the patient's symptoms. The Plaintiffs merely point to their own treating physician, Dr. Silva, who apparently disagrees with Dr. Scott's conclusions, without stating any position on the methodology of differential diagnosis. Those competing opinions merely present questions to the factfinder of the relative weight to give two competing opinion, not a basis under Rule 702 for excluding one opinion entirely. Accordingly, the Court finds that State Farm has made a sufficient showing of both Dr. Scott's qualifications and methodology to support this opinion and the Court rejects the Plaintiffs' Rule 702 challenge to it.

## CONCLUSION

For the foregoing reasons, State Farm's Motion to Exclude (**# 125**) and the Plaintiffs' Motion to Exclude (**# 127**) are **GRANTED IN PART** and **DENIED IN PART** as set forth herein. The Plaintiffs' Motion for Extension of Time (**# 124**) is **DENIED AS MOOT**; the

Plaintiffs' original Motion to Exclude **(# 126)** is **DENIED AS SUPERSEDED** by Docket # 127;

and the Plaintiffs' Motion to Change Venue **(# 128)** is **DENIED AS PREMATURE**.

There being no remaining matters to be resolved, the parties shall begin preparation of a

Pretrial Order and shall jointly contact chambers to schedule a Pretrial Conference.

Dated this 23d day of March, 2021.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge